UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------x
                                :

VICTOR M. LOPEZ,                :

                                :

                   Plaintiff,     :         11 Civ. 281 (TPG)

                                :

          – against –        :         **<u>OPINION</u>**

                                :

845 WEA MANAGEMENT INC., and  :
DOUGLAS ELLIMAN REALTY INC.,   :

                                :

                 Defendants.   :
----------------------------------------------x

Plaintiff Victor Lopez is suing his former employer, 845 WEA Management, Inc., c/o R.A. Cohen & Associates ("845 WEA"), alleging that he was discriminated against due to his race. Plaintiff is Puerto Rican. He worked for defendants for almost twenty years but was terminated on October 8, 2008. He had been serving as a doorman. In his complaint, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and state tort law.

Defendants have filed a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

The court grants defendants' motion to dismiss plaintiff's claims for intentional infliction of emotional distress, defamation, and discrimination and hostile work environment under the NYSHRL and NYCHRL. The court denies defendants' motion to dismiss plaintiff's discrimination and hostile work environment claims under Title VII.

<u>The Complaint</u>

The following facts are taken from plaintiff's complaint and from both parties' submissions in relation to defendants' motion to dismiss the complaint. For the purposes of this opinion, they are assumed to be true.

Plaintiff began his employment with defendant 845 WEA nearly twenty years ago.  He served as a doorman at 845 West End Avenue in Manhattan (the "Property"), a residential apartment building.  Plaintiff is Hispanic and is originally from Puerto Rico.

R.A. Cohen was the managing agent of the Property at the time of plaintiff's termination from employment in October 2008.  Douglas Elliman Realty was a prior owner of the Property and is a party in interest.

Plaintiff was a member of SEIU Local 32BJ (the "Union"), which represents the building service workers at the Property.  A collective bargaining agreement (the "CBA") was in place at the Property at operative times.  The CBA requires arbitration of all claims and grievances arising out of the workplace, including without limitation, claims of discrimination under federal, state, and local law.[1]

Plaintiff states that the employment discrimination against him began in 2000 when Pashko Preldakaj was hired by defendant as the superintendent and a management official for 845 WEA and became plaintiff's supervisor.

Around the time of Preldakaj's hiring, plaintiff alleges that he heard

---

[1] Although defendants note the existence of an arbitration clause in the CBA, they do not argue in their motion to dismiss that plaintiff's claims should be dismissed for this reason or otherwise seek to compel arbitration of plaintiff's discrimination charges.

Preldakaj say, "Sooner or later I will get rid of all the Puerto Ricans in here."  He also alleges that Preldakaj made the statement directly to him.  Since becoming superintendent, Preldakaj has terminated five Hispanic employees but has not terminated any non-Hispanic employees.  845 WEA had twelve employees in total.  Despite the firings, there were Hispanic employees who continued to work for 845 WEA after plaintiff was terminated, and Preldakaj hired at least one new Hispanic employee after becoming superintendent.  Plaintiff disputes the significance of this hiring, stating that the new Hispanic employee was hired during the time in which a discrimination complaint of another Hispanic employee, Edgar Correa, was being investigated, and that five non-Hispanic employees have been hired.

A former superintendent of the building, Gerard Chretian, also stated that Preldakaj told him that "if he ever became super, he'd get rid of the spics." Chretian also stated, "He kept his word.  He did."  Chretian further stated that when he was superintendent, he used a plumbing company that was "Spanish owned" and sent out "Spanish" plumbers but that Preldakaj has stopped working with that company.

Plaintiff further alleges that Hispanic employees are treated less favorably than non-Hispanic employees in flexibility of schedules for vacation, holiday work, and time off, and that non-Hispanic employees are permitted to do private work on company time, whereas Hispanic employees are denied the same privilege.  Plaintiff states that Preldakaj failed to pay plaintiff's vacation pay on time (apparently on one occasion), made unauthorized changes to plaintiff's time

sheets, and falsely accused plaintiff of making threats against Preldakaj and his family.

Plaintiff also alleges that on or about September 3, 2008, Preldakaj accused plaintiff of being drunk on duty and also published the accusation in a letter to Steve Esposito, a representative of the building's managing agent. Plaintiff alleges that the statement was false.

Plaintiff was terminated in April 2008.  This termination was later converted to a suspension with a final warning.  On October 8, 2008, plaintiff was terminated.  Plaintiff was one year short of collecting his pension.

Plaintiff alleges that he has suffered and is continuing to suffer irreparable injury, monetary damages, mental distress, anguish, and humiliation as a result of defendants' acts and discriminatory practices.

Plaintiff's complaint includes six claims for relief:

1.  Discrimination in the terms, conditions, and privileges of his employment on the basis of his race in violation of Title VII.

2.  Discrimination in the terms, conditions, and privileges of his employment on the basis of his race in violation of the New York State Human Rights Law ("NYSHRL").

3.  Discrimination in the terms, conditions, and privileges of his employment on the basis of his race in violation of the New York City Human Rights Law ("NYCHRL").

4.  Intentional infliction of emotional distress.

5.  A hostile work environment based on race, in violation of the terms,

conditions, and privileges of his employment in violation of federal, state, and city law.

6.    Defamation, libel, and slander.

<u>SDHR Complaint and EEOC Complaint</u>

On or about August 27, 2008, plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("SDHR").  Plaintiff indicated that he wished for his SDHR complaint to be cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC").[2]  In the SDHR complaint, plaintiff alleged that 845 WEA discriminated against him because of race in violation of Title VII and the NYSHRL.  The complaint alleged the following:  (1) In or about 2000, Preldakaj made a statement that he would "get rid of" Puerto Rican employees; (2) Preldakaj changed the dates on plaintiff's time cards on unspecified dates; (3) Preldakaj threatened to discipline plaintiff for "speak[ing] up for [him]self"; and (4) Preldakaj provided plaintiff with his vacation pay on August 27, 2008, when the CBA provided that plaintiff was to be paid on August 13, 2008.  It appears that plaintiff's complaint did not expressly use the words "hostile work environment."

On October 15, 2008, plaintiff notified the SDHR via letter that he had been terminated.  He did not file an additional administrative complaint or

---

[2] The parties' submissions are not entirely clear on the cross-filing of plaintiff's SDHR complaint with the EEOC.  However, it appears that the SDHR and the EEOC have a "work-sharing agreement."  Under the agreement, a plaintiff need not file a complaint with both agencies.  Instead, a plaintiff files a complaint with one of the agencies and indicates the he or she wants to "cross-file" the complaint with the other agency.

charge regarding the termination, and he did not formally request to amend his SDHR complaint. Plaintiff also did not serve a copy of the letter on 845 WEA in accordance with the SDHR's Rules of Practice. It appears that the SDHR did not notify the EEOC of this new information, although plaintiff believed at the time that the SDHR would notify the EEOC. On August 26, 2009, the SDHR amended plaintiff's complaint, maintaining the initial allegations but adding the following language: "On October 8, 2008, I was terminated. I believe the above named respondent terminated me because of my race." Plaintiff states that he does not know the reason for the long delay between his notifying the SDHR of his termination and the SDHR amending his complaint. It appears, though the record does not directly state, that plaintiff was not represented by an attorney at the time he filed the SDHR complaint on August 27, 2008, or when he filed the letter notifying the SDHR of his termination on October 15, 2008. It also appears, though again the record does not directly state, that the amended complaint was cross-filed with the EEOC some time on or after August 26, 2009, or 325 days or more after plaintiff's termination.

On July 21, 2010, the SDHR issued a five-page Determination and Order After Investigation (the "SDHR dismissal"), finding that "there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice." The SDHR dismissal appeared to place particular emphasis on the fact that Hispanic employees continued to work for 845 WEA and that Preldakaj had hired a new Hispanic employee since becoming superintendent.

- 6 -

On October 19, 2010, the EEOC issued a Dismissal and Notice of Rights, indicating that the EEOC adopted the findings of the SDHR and that plaintiff had ninety days to "file a lawsuit against the respondent under federal law based on this charge in federal or state court." Plaintiff commenced this action on January 14, 2011.

<u>Arbitration</u>

On November 7, 2008, the Union filed an arbitration complaint concerning plaintiff's October 8, 2008 termination. The question presented was whether plaintiff was terminated for just cause. The Union, plaintiff, and 845 WEA participated in arbitration before Arbitrator John Anner. Plaintiff sought reinstatement with full back pay, benefits, and lost seniority. Plaintiff did not raise discrimination claims in the arbitration. Three hearings were held between February and April, 2009. Plaintiff was represented by counsel from the Union, testified on his own behalf, and was able to present witnesses. Preldakaj also testified at the hearing, apparently speaking at length about plaintiff's disciplinary record at the Property and the basis for his termination.

In an Opinion and Award dated June 15, 2009, Arbitrator Anner held in favor of 845 WEA and determined that it had just cause to terminate plaintiff's employment. The report states that plaintiff's "behavior as proven by the overwhelming preponderance of the evidence is unacceptable under any circumstances and coupled with his poor lateness and attendance record is just cause for his termination under the Collective Bargaining Agreement."

<u>Discussion</u>

- 7 -

Defendants move to dismiss the complaint under FRCP 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  Specifically, defendants argue that:

- Claims 1 and 5 under Title VII should be dismissed because plaintiff has not timely exhausted his administrative remedies concerning his termination or hostile work environment claims and because plaintiff fails to state a claim.

- Claims 2, 3, and 5 under the NYSHRL and NYCHRL should be dismissed because plaintiff elected his remedies by filing a complaint with the SDHR.

- Claims 4 and 6 under state tort law should be dismissed because they exceed the applicable statutes of limitations, the alleged defamatory statement is protected by a qualified privilege, the claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), and plaintiff fails to state a claim for IIED.

Discrimination under Title VII

Title VII requires a claimant to file a charge of discrimination with the EEOC within 300 days of the discriminatory act.  42 U.S.C. § 2000e-5(e)(1).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Termination is considered a discrete act, and claims based on termination are barred if not timely filed.  Valtchev v. City

of New York, 400 Fed.Appx. 586, 588 (2d Cir. 2010).

Although there does not appear to be precedent from the Second Circuit or the Southern District of New York directly on point, other courts have differed on whether to excuse a plaintiff's failure to fully exhaust administrative remedies due to cross-filing of complaints.  In one case, a plaintiff filed a completed questionnaire with the District of Columbia Office of Human Rights ("DCOHR") alleging discrimination.  He completed the questionnaire within the 300-day time period mandated by the EEOC.  The plaintiff later filed a formal complaint of discrimination, but this formal complaint fell outside the 300-day time period.  The plaintiff was not represented by counsel.  The DCOHR cross-filed the plaintiff's complaint with the EEOC but had not cross-filed the original questionnaire.  The court excused the plaintiff's failure to exhaust, finding that although the DCOHR "did not cross-file with the EEOC and did not notify the defendant as statutorily mandated, the plaintiff should not be penalized for the apparent mistakes of the DCOHR."  Nesemeier v. Commonwealth Land Title Ins. Co., 2004 WL 2070825, at *4 (D.D.C. Sept. 10, 2004).

In another case, a physician plaintiff filed a discrimination charge with the Pennsylvania Human Relations Commission ("PHRC") and later filed an amended charge with the EEOC.  The plaintiff never instructed the EEOC to cross-file the amended charge with the PHRC.  The court found that the state law grounds for the new claims the plaintiff added in his amended EEOC complaint had not been exhausted and were therefore barred.  Clayton v. Pennsylvania Dept. of Public Welfare ex. rel. Richman, 2007 WL 575677, at *7-8

(M.D.Pa. Feb. 20, 2007).

In this case, defendants contend that plaintiff did not timely exhaust his administrative remedies under Title VII because he did not amend his EEOC complaint to include his termination until after the 300-day time limit had expired. As noted above, plaintiff was terminated on October 8, 2008. Although he notified the SDHR of his termination via letter on October 15, 2008, the SDHR did not amend his complaint until August 26, 2009. Neither plaintiff nor the SDHR notified the EEOC of plaintiff's termination until August 26, 2009, or 325 days after plaintiff's termination, at the earliest. As noted above, it appears that plaintiff was not represented by an attorney when he filed his SDHR complaint and subsequent letter notifying the SDHR of his termination. Because plaintiff did timely notify the SDHR of his termination and because he believed the information he provided to the SDHR would be shared with the EEOC, plaintiff should not be penalized for the time it took for the SDHR to amend his complaint. The court finds that plaintiff did timely exhaust his remedies under Title VII.

Defendants next contend that plaintiff's Title VII claim should be dismissed because he fails to state a plausible cause of action for discrimination based on race. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must prove that: (1) he was within a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Leibowitz v. Cornell University, 584 F.3d 487, 498

- 10 -

(2d Cir. 2009).  In deciding a motion to dismiss under FRCP 12(b)(6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor.  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

It is undisputed that plaintiff was within a protected class (Hispanic) and that he was subject to an adverse employment action (termination).   The remaining questions are whether plaintiff was qualified for his position as doorman and whether the termination occurred under circumstances giving rise to an inference of discrimination.  Drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has stated a plausible cause of action for discrimination.  Plaintiff worked at the Property for 19 years, supporting an inference that he was qualified for his job.  Plaintiff alleges that Preldakaj threatened to and did in fact fire Hispanic workers and that he treated Hispanic workers less favorably than non-Hispanic workers.  These facts support an inference that Preldakaj discriminated against Hispanic workers, including plaintiff.  The court denies defendants' motion to dismiss plaintiff's Title VII discrimination claim for failure to state a cause of action.

<u>Discrimination under NYSHRL and NYCHRL</u>

The NYSHRL and NYCHRL both include an "election of remedies" provision, precluding a plaintiff from initiating judicial action if he has already filed a complaint of discrimination with the SDHR.  New York Executive Law § 297(9) reads, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of appropriate

> jurisdiction . . . unless such person had filed a complaint hereunder
> or with any local commission on human rights . . . provided that,
> where the division has dismissed such complaint on the grounds of
> administrative convenience, on the grounds of untimeliness, or on
> the grounds that the election of remedies is annulled, such person
> shall maintain all rights to bring suit as if no complaint had been
> filed with the division.

A plaintiff whose SDHR complaint is dismissed can appeal the determination to

the New York State Supreme Court.  N.Y. Exec. Law § 298.

     Where a plaintiff files a claim with the SDHR and subsequently files suit

in federal court raising substantially similar charges, the federal court lacks

subject matter jurisdiction.  Session v. New York City Dist. Council of

Carpenters, 2011 U.S. Dist. LEXIS 14050, *12-15 (S.D.N.Y. Feb. 10, 2011).  In

Session, the court stated:

> Plaintiff raised State claims with the SDHR based on the same
> alleged discriminatory conduct at issue in this action.  After an
> investigation, the SDHR dismissed Session's charges against
> defendants, citing a lack of probable cause.  Plaintiff could have—
> but did not— appeal these rulings to the Supreme Court of the State
> of New York pursuant to N.Y. Exec. Law § 298.  Because Session
> chose to have the SDHR adjudicate her State law claims, this Court
> lacks subject matter jurisdiction over those same claims in this
> action and therefore they must be dismissed.

Id. at *13-14 (citing Moodie v. Federal Reserve Bank of N.Y., 58 F.3d 879,

882 (2d Cir. 1995)).

     Where a court lacks subject matter jurisdiction to hear a complaint,

the court must dismiss under FRCP 12(b)(1).

     As noted above, plaintiff in this case filed a SDHR complaint, which

was dismissed for lack of probable cause.  Therefore, plaintiff has elected

his remedies, and the court lacks subject matter jurisdiction over his

- 12 -

NYSHRL and NYCHRL claims.  The court grants defendants' motion to dismiss plaintiff's second and third claims for relief under FRCP 12(b)(1).

Hostile Work Environment

In addition to his Title VII, NYSHRL, and NYCHRL discrimination claims, plaintiff also claims that defendants subjected him to a hostile work environment "in violation of Federal, State and City Law."  Although plaintiff is not explicit about the statutory basis for this claim, he is presumably referring to Title VII, NYSHRL, and NYCHRL.

The NYSHRL and NYCHRL election of remedies provision discussed above extends to all claims arising out of the same events.  Musaji v. Banco Do Brasil, 2011 U.S. Dist. LEXIS 68161, at *14-15 (S.D.N.Y. June 21, 2011).  A "plaintiff merely asserting a new legal theory in front of a court based on the same underlying conduct alleged at the Commission is barred from the judicial remedy sought."  Id. at *14.

In this case, plaintiff points out the SDHR dismissal did not explicitly mention a hostile work environment claim.  He therefore argues that he did not elect his remedies with respect to this claim.  However, the underlying facts in both the SDHR complaint and the hostile work environment claim now before this court are identical.  The court grants defendants' motion to dismiss the NYSHRL and NYCHRL portions of plaintiff's fifth claim for relief for hostile work environment because plaintiff elected his remedies and the court therefore lacks subject matter jurisdiction.

As stated above, Title VII requires a claimant to file a charge of

discrimination with the EEOC within 300 days of the discriminatory act.  42

U.S.C. § 2000e-5(e)(1).  However, this "exhaustion requirement is relaxed under

the 'reasonably related' doctrine if, *inter alia*, the conduct complained of would

fall within the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination."  <u>Mathirampuzha v. Potter</u>,

548 F.3d 70, 76 (2d Cir. 2008) (internal quotations omitted).  Courts "frequently

invoke the 'reasonably related' doctrine when the factual allegations made in the

administrative complaint can be fairly read to encompass the claims ultimately

pleaded in a civil action or to have placed the employer on notice that such

claims might be raised."  <u>Id.</u> at 77.

   Defendants argue that plaintiff's hostile work environment claim under

Title VII must be dismissed because he did not explicitly raise the claim in his

EEOC complaint and therefore did not exhaust his administrative remedies.

However, as defendants point out in arguing that plaintiff elected his remedies

under the NYSHRL and NYCHRL, the facts underlying plaintiff's SDHR

complaint and his hostile work environment claim are identical.  The SDHR

complaint was cross-filed with the EEOC.  Therefore, the factual allegations in

plaintiff's EEOC complaint are "reasonably related" to his hostile work

environment claim, and plaintiff has exhausted his remedies with respect to the

Title VII hostile work environment claim.

   To make out a claim for hostile work environment, a plaintiff must allege:

(1) that the workplace was permeated with discriminatory intimidation that was

sufficiently severe or pervasive to alter the conditions of the work environment,

and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995).  "In determining whether an actionable hostile work environment claim exists, [courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably  interferes with an employee's work performance."  Morgan, 536 U.S. at 116 (internal quotations omitted).  To avoid dismissal under FRCP 12(b)(6), a plaintiff alleging hostile work environment "need only plead facts sufficient to support the conclusion that [he or] she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his or] her employment altered for the worse," and the Second Circuit has "repeatedly cautioned against setting the bar too high in this context."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations omitted).

In this case, defendants argue that plaintiff has failed to state a plausible claim because his complaint simply makes a blanket assertion that he was subjected to a hostile work environment without reciting the elements of the claim.  As noted above, plaintiff's complaint alleges that Preldakaj stated he intended to "get rid of" all the Puerto Ricans or "spics" working at the Property, terminated five Hispanic employees and no non-Hispanic employees, changed plaintiff's timesheets, falsely accused plaintiff of being drunk at work, falsely accused plaintiff of threatening Preldakaj's family, allowed non-Hispanic

employees to conduct personal work on company time without extending the same privilege to Hispanic employees, and treated Hispanic employees less favorably with respect to scheduling flexibility.  Plaintiff further asserts that he suffered mental distress, anguish, and humiliation as a result of these acts. Plaintiff has alleged sufficient facts to support the conclusion that a reasonable employee would find that plaintiff's employment was "altered for the worse."  The court denies defendants' motion to dismiss plaintiff's hostile work environment claim under FRCP 12(b)(6).

Tort Claims – IIED and Defamation

Plaintiff's fourth claim for relief alleges that defendants "have engaged in the tort of the intentional infliction of emotional distress," ("IIED") presumably for Preldakaj's treatment of plaintiff up through and including his termination, which took place on October 8, 2008.  Plaintiff's sixth claim for relief alleges that defendants "intentionally defamed, libeled and slandered plaintiff in accusing plaintiff of intoxication" on or about September 3, 2008.

Under New York law, there is a one-year statute of limitations for IIED and defamation claims.  N.Y. C.P.L.R. § 215(3).  While statute of limitations is an affirmative defense, a defendant may raise it in a pre-answer motion to dismiss under FRCP 12(b)(6) if the defect appears on the face of the complaint.  Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 426-27 (2d Cir. 2008).

As noted above, plaintiff filed this case on January 14, 2011.  Plaintiff's interactions with defendants ended when he was terminated on October 8, 2008, and the alleged defamation took place on or about September 3, 2008.

- 16 -

The events giving rise to both the IIED and defamation claims took place more than one year prior to the filing of this action. The defect is clear from the face of the complaint. Therefore, the court grants defendants' motion to dismiss plaintiff's fourth and sixth claims for relief under FRCP 12(b)(6).

Defendants also argue that the alleged defamatory statement is protected by a qualified privilege, that plaintiff failed to state a claim for IIED, and that both the defamation and IIED claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"). However, because the claims are clearly barred by the statute of limitations, the court does not reach these additional arguments.

## CONCLUSION

The court grants defendants' motion to dismiss plaintiff's claims for intentional infliction of emotional distress and defamation.

The court grants defendants' motion to dismiss plaintiff's discrimination and hostile work environment claims under the NYSHRL and NYCHRL.

The court denies defendants' motion to dismiss plaintiff's discrimination and hostile work environment claims under Title VII.

SO ORDERED.

Dated: New York, New York
February 29, 2012

Thomas P. Griesa
U.S. District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/29/2012
```

- 17 -